1   Wendi Santino, Esq.
    Law Office of Wendi Santino
2   445 Marine View Ave, Suite 300
    Del Mar, CA 92014
3   #25611
    Telephone: (858) 481-9600
4   Wendi@santinolaw.com

5

6   Jodi L. Doucette, Esq.
    Doucette Law Group, P.C.
    11622 El Camino Real, Suite 100
7   San Diego, CA 92130
    Telephone (858) 764-2522

8

9   Attorneys for Plaintiff
    JANICE SANTINO

10              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
11

12  JANICE SANTINO,                          Case No.

13          Plaintiff,                       **PLAINTIFF'S COMPLAINT FOR DAMAGES**

14      v.                                   1. Disability Discrimination (Based on Americans
                                                with Disability Act)
15  ANDREW BENSON, ENVISION RADIOLOGY        2. Retaliation in Violation of the Americans with
    LLC, and DOES 1 through 100, inclusive,     Disability Act
16                                           3. Age Discrimination (Based on Age
            Defendants.                          Discrimination in Employment Act)
17                                           4. Willful Violation of the Age Discrimination Act
                                             5. Willful Violation of Americans with Disability
18                                              Act
                                             6. Title VII, Retaliation for Filing Govt Claims
19                                           7. Violation of Family and Medical Leave Act
                                             8. Disparate Impact under ADEA, ADA and Title
20                                              VII
21
22                                                  DEMAND FOR JURY TRIAL
23
            Plaintiff JANICE SANTINO alleges causes of action against Defendants and Does 1
24
    through 100, inclusive, as follows:
25
                                    **JURISDICTION**
26
            This is a civil action for discrimination based on age, medical condition, and disability,
27
    retaliation and other related claims for damages, including punitive damages and attorney fees and
28

costs. The acts and omissions alleged against the Defendants herein occurred in the State of Colorado. This Court has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§1331 and 1343. This Court also has supplemental jurisdiction over the state claims in this action pursuant to 28 U.S.C. §1367. Venue is proper within this District pursuant to 28 U.S.C. §1391. Plaintiff worked and resided, and the acts committed occurred within the jurisdiction of the U.S. District Court for the District of Colorado.

## PARTIES

1.    At all relevant times mentioned herein, Plaintiff JANICE SANTINO (hereinafter "Plaintiff") is, and was, at all times material to this action, an individual, residing in the State of Colorado, County of El Paso, City of Monument within the District of Colorado for the U.S. District Courts.

2.    Plaintiff is informed and believes and thereupon alleges that Defendant ENVISION RADIOLOGY, LLC, (hereinafter "Envision") is a business, duly authorized to transact business in the City of Colorado Springs, County of El Paso, State of Colorado, authorized to perform all work relevant in support of the causes of action set forth below. Defendant Envision employs over 100 personnel.

3.    Plaintiff is informed and believes and thereupon alleges that Defendant ANDREW BENSON (hereinafter referred to as "Benson") was and is an individual, employed at all relevant times by Envision and acted and was directed to act as the agent of Defendant Envision, in the State of Colorado, City of Colorado Springs. He was a supervisor for Plaintiff and was directed to be such by Envision to make adverse decisions in this case.  He is sued in his individual and official capacity herein.

4.    Plaintiff is informed and believes, and based thereupon alleges that Defendants DOES 1 through 100, inclusive, are either individuals residing in the State of Colorado, or business entities whose forms are unknown, duly authorized to transact, and in fact transacting, business in the State of Colorado.

5.    Plaintiff is unaware of the true names and capacities, whether corporate, individual, associate, or otherwise of the other Defendants, and therefore sues these

Defendants by fictitious names DOES 1 through 100, inclusive. When the true names and capacities have been ascertained, Plaintiff will amend this Complaint to state the same.

6.    On information and belief, Plaintiff alleges that these Defendants (Envision, Benson, and Does 1 through 100 collectively known as "Defendants") and each of them, are, and at all times were involved in, or in some manner were responsible for, the damages alleged in Plaintiff's Complaint, whether as principal, supervisor, beneficiary, joint, and were acting within the course and scope of said agency and/or employment, and that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged and that Plaintiff's damages, as herein alleged, were proximately caused by such Defendants, and each of them.

7.    Plaintiff pursued claims of unlawful employment practices with the state Colorado Civil Rights Division, and with the Federal Equal Employment Opportunity Commission.  After some months of pursuing an investigation, hearing and proceedings, Plaintiff received a Right to Sue from both entities which is attached hereto at Exhibit 1.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8.    At all times herein mentioned, Plaintiff is and was over the age of 65. Envision employed Plaintiff from November 24, 2014, through December 14, 2015.  Plaintiff was originally a temporary employee for Envision from November 24, 2014 through March 16, 2015. On March 16, 2015, Plaintiff was asked by Envision to be made a permanent employee of Envision, and remained in such capacity until December 14, 2015, when she was involuntarily terminated from Envision's employ.  At all times herein, Plaintiff satisfactorily performed her job functions for Envision.

9.    At all times relevant herein, Envision is and was a business that operated in the State of Colorado.  Envision is in the business industry of radiology.  Envision hired Plaintiff as a temporary and then permanent employee as an Administrative Assistant, assigned to various departments at Envision, including Patient Payments, Refunds, and Receptionist, among other positions and departments.

10.    At all times herein relevant, Defendant Benson was employed by Envision and was directed by Envision to have a supervisory role over Plaintiff in her performance of work duties at Envision.   As the agent of Defendant Envision and as a supervisor, he was directed by the Defendant Envision to perform the duties of supervision over Plaintiff.

### FACTUAL ALLEGATIONS

11.    On November 25, 2014, Plaintiff was hired by Add Staff, a temporary agency, and placed at Envision to work on patient refunds.   She was also asked to assist in posting patient payments, with which she complied.

12.    When the Add Staff arrangement was expiring, Plaintiff's supervisors Rebecca Odom and Phillip Malone did not want to lose Plaintiff from Envision's employ so they created a new permanent position for her at Envision, Administrative Assistant.   Plaintiff worked in that capacity in the Refunds Department, Payment Department, Tier II telephones, and as a receptionist when asked, among other departments.

13.    Plaintiff was doing so well as an employee of Envision that on July 10, 2015, the newest manager in the Payment Department, Marlene Bernal, told Plaintiff that she was one of their top performers, she wished she had more performers like Plaintiff that put in the extra time and effort to get work accomplished, and she gave Plaintiff a $1200 bonus.   Plaintiff was never told that she was anything but a good employee for Envision.   Andrew Benson was also a supervisor to Plaintiff and never told Plaintiff that her work was inferior or less than adequate.

14.    On November 11, 2015, Plaintiff had testing done on her kidney and a mass was found.   She was later told by her doctors that she needed surgery for removal of her cancerous kidney.

15.    On November 13, 2015, Plaintiff told her team leader in the Payment Department, Renae Madrid, that she needed a CT scan due to the results of her kidney test showing a mass.   Ms. Madrid suggested she have the scan completed at Envision, as the scans were free for employees, unless they had Medicare to cover the scan.    Ms. Madrid took Plaintiff to Andrew Benson, who was Plaintiff and Ms. Madrid's direct supervisor at the time, to see what Envision could do about Plaintiff's medical condition as to testing.   When Benson heard Plaintiff had Medicare, a healthcare

plan for those over 65, Benson stated in surprise, "You don't look 65!  You don't look a day over 64."

16.    On November 16, 2015, Plaintiff advised her team leader Madrid that she would have surgery, following a biopsy on November 23, 2015.

17. Following the biopsy on November 23, 2015, Plaintiff could not immediately return to work because she was passing blood, had incontinence from the biopsy, and had to have a catheter placed.  Plaintiff advised Bernal and Madrid that she could not return to work immediately, and that she had cancer.  Ms. Madrid told others in her Department of the news that Plaintiff had cancer and could not return to work immediately.

18.    On November 30, 2015, Plaintiff returned to work in the Payments Department.  On December 2, 2015, Plaintiff advised her team leader, Department team, and supervisors that she would have surgery to have her cancerous kidney removed on December 21, 2015.  Plaintiff advised her supervisor Bernal of such details of the surgery in writing at about that time.

19.    Plaintiff asked for time off for this surgery from December 21 through December 31, 2015 during a meeting with the whole Payment team, including supervisor Bernal. Despite such notice, Plaintiff was never offered Family Leave time off for this surgery.

20.    Instead, on December 14, 2015, Plaintiff was terminated from Envision.  Plaintiff had no prior notice that she would be terminated from Envision's employ.  She was terminated within two weeks of advising Defendants of her need for leave time for cancer surgery.

21.    Also terminated at that time in Plaintiff's department were three other older women, while the younger employees of that department were permitted to stay in Envision's employ.

## I.

## FIRST CAUSE OF ACTION

### (All Defendants and DOES 1 -100)

### Disability Discrimination Based on Americans with Disability Act

### 42 U.S.C.A. Section 12101 et seq.

22.    Plaintiff incorporates paragraphs 1 through 21 herein by reference.

23.    This cause of action is brought pursuant to the Americans with Disability Act (hereinafter "ADA"), 42 U.S.C.A Section 12101 et seq.

24.    Plaintiff has filed this cause of action subsequent to the timely filing of a Charge of Discrimination based on age with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission, a true and correct copy of which is attached as Exhibit 1 to this Complaint. Plaintiff has filed this cause of action and case pursuant to a Right to Sue Letter issued by the Equal Employment Opportunity Commission (hereinafter "EEOC") within the statutory time requirement.

25.    Plaintiff suffered a medical condition and disability under 42 U.S.C.A. §12102, while employed by Envision, as defined and protected by the ADA, including kidney disease and cancer, while working for Defendants.

26.    Defendants and DOES 1 to 100, and each of them, were made aware of Plaintiff's medical conditions during Plaintiff's employ with said Defendants, up to and through December 14, 2015. Plaintiff advised her Envision supervisors Bernal, Madrid, Defendant Envision, and Defendant Benson and DOES 1 to 100 of her conditions in early December 2015. Plaintiff was never offered an accommodation by said Defendants due to her expressed and newly arising disability, despite being entitled to such. Instead of offering Plaintiff leave time for her medical condition, Plaintiff was terminated within the same month she advised Defendants Benson and Envisions management and DOES 1 -100 of her disability.

27.    Similarly, a co-worker in her department, Christine Anderson, suffered a medical condition and/or a disability as defined under protected under 42 U.S.C.A. §12012, including Lupus. Ms. Anderson advised Envision of her medical conditions and disabilities, including a surgery she required about her Lupus, causing sensitivity to light. Despites such awareness, Ms. Anderson was never offered an accommodation, but was also instead, terminated by Envision, demonstrating a pattern and practice by Envision of unlawful employment practices.

28.    Despite such knowledge of Plaintiff (and/or Ms. Anderson's disabilities), and based thereupon, Plaintiff was terminated by Defendants Benson and Envision and DOES 1-100 within weeks of Defendants gaining such knowledge of her disability. Plaintiff's termination was in whole or in part due to her disability, or in combination of her age and disability, for which Defendants were

previously and recently made aware.  Plaintiff (and Anderson as well) was treated less favorably than her similarly-situated disability-free coworkers in the terms and conditions of her employment because of her disability, and/or in retaliation for complaining about disability discrimination.

29.     Defendants, and each of them, intentionally or negligently discriminated against Plaintiff and others based on their disability and/or medical conditions, and failed to accommodate Plaintiff and/or others' disability, despite such knowledge of their disability.  Defendants, and each of them, had a pattern and practice of terminating employees due to their disabilities and not re-hiring them.

30.     As a result of such discrimination and failure to accommodate Plaintiff's protected disability by Defendants, Plaintiff has and will suffer damages and future harm.

31.     Plaintiff has suffered harm from such actions by Defendants, and each of them, and the injuries and damages are in an amount to be proven at trial, including compensatory damages, past and future lost wages, reputational damage, pain and suffering damages, punitive damages, attorney fees and costs, among other damages, including 42 U.S.C.A. §12117 remedies, all to be proven at trial.

## II.

### SECOND CAUSE OF ACTION

**(Defendants Envision and Does 1-100)**

**Retaliation in Violation of Americans with Disability Act**

**42 U.S.C.A. Section 12203**

32.     Plaintiff incorporates paragraphs 1 through 31 herein by reference.

33.     This cause of action is brought pursuant to the Americans with Disability Act (hereinafter "ADA"), Prohibition against Retaliation and Coercion, 42 U.S.C.A. Section 12203. This section provides that no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the ADA or because such individual made a charge or participated in any manner in an investigation, proceeding, or hearing under this chapter.

34.     Within days of Plaintiff informing Envision that she had kidney medical problems and ultimately cancer and needed time off for kidney surgery, she was terminated from her position at

Envision, in December 2015. Plaintiff was asked to sign a severance agreement offered to her by Envision to waive her rights, but she declined, telling them she objected to their unlawful employment practice and her termination, and that she wished to pursue legal governmental action as a result of her unjust termination. Plaintiff and her attorney advised Envision of her intent to file claims against Envision for unlawful ADA discrimination, among other claims.

35. In June 2016, Plaintiff filed a Complaint with the Colorado Civil Rights Division (hereinafter "CCRD") and EEOC, alleging unlawful discrimination, ADA violations, wrongful termination, and other claims. Envision was immediately advised of this action by CCRD and others. She requested an investigation through the CCRD and EEOC, and a hearing as to her rights and Envision's unlawful employment practices, including under the ADA provisions.

36. From December 2015 to date, Envision sought and often advertised requests for candidates or applications for various open positions at Envision, due to their employment needs. Plaintiff has on many occasions since her termination in December 2015 applied for open and advertised positions at Envision to be reemployed at Envision, for similar or exact positions or duties she had previously performed for Envision. Ms. Anderson likewise applied for open, similar positions at Envision after her termination.

37. Plaintiff has been denied reemployment for each and every open and/or advertised position she applied for at Envision since her involuntary termination from Envision. Plaintiff was not even afforded an interview or follow-up responses for most if not all such applications she made to Envision for these open positions. Likewise, Christine Anderson was denied the opportunity to be rehired by Envision.

38. In failing to consider and/or hire Plaintiff for reemployment at Envision, and due to their knowledge of Plaintiff's objections and pursuit of her governmental claim against their unlawful employment practices, Envision, DOES 1-100 and/or its agents acted in retaliation of Plaintiff's rights to pursue her rights to object to the unlawful ADA violations and employment practices at Envision and due to her filing governmental claims against Envision at EEOC and CCRD, in which she also requested an investigation and a hearing as to Envision's practices under the ADA.

39.     Envision, DOES 1-100, and its agents, in doing so, discriminated against Plaintiff because she opposed Envision's acts or practices made unlawful by the ADA act and because she made a charge and participated in an investigation, proceeding, or hearing.  Envision had a pattern and practice of retaliating against persons who filed complaints, requesting hearings and/or investigations of their ADA and other unlawful employment practices.

40.     As a result of such retaliation and discrimination, Plaintiff has and will continue to suffer harm from such actions by said Defendants and each of them, and the injuries and damages are in an amount to be proven at trial, including compensatory damages, past and future lost wages, reputational damage, pain and suffering damages, punitive damages, attorney fees and costs, among other damages to be proven at trial.

### III.

### THIRD CAUSE OF ACTION

### (All Defendants and DOES 1-100)

### Age Discrimination based on Age Discrimination in Employment Act

### 42 U.S.C.A. Section 621 et seq.

41.     Plaintiff incorporates paragraphs 1 through 40 herein by this reference.

42.     This cause of action is brought pursuant to the Age Discrimination Employment Act (ADEA), Prohibition of Age Discrimination, Section 621 et seq.

43.     Plaintiff, at all times pertinent to this Complaint, was within the protected age group as provided for by the ADEA, as Plaintiff was over 40 years of age. In direct violation of the ADEA, Defendants, and DOES 1-100 by and through its agents and employees, engaged in discriminatory acts under the ADEA.

44.     When Defendant Benson was first made aware of Plaintiff's age when he found out in November 2015 that Plaintiff had Medicare, which is generally only available as a healthcare plan for those over 65, Benson stated in surprise, "You don't look 65!  You don't look a day over 64." Benson was made aware of Plaintiff's age, and her being in the protected class under the ADEA.

45.     Approximately one month or so later of Benson learning of Plaintiff's age, Defendant Benson terminated Plaintiff, on his own behalf and in his official capacity and on behalf of Defendant

Envision and DOES 1-100. Because of such awareness of Plaintiff's age, Defendants and each of them, terminated Plaintiff from Envision's employ, in whole or in part, due to this knowledge of her older age, an age protected under the ADEA. Benson was the agent and instrument of Envision and was acting within the scope of his official employment supervisorial capacity and at Envision's bequest, in whole or in part, when he terminated Plaintiff.

46. Despite such knowledge of Plaintiff's age, and based thereupon, Plaintiff was terminated by Defendant Benson within weeks of Defendant Benson gaining such knowledge of her age. Plaintiff's termination was in whole or in part due to her age, or in combination of her age and disability, for which Defendants were previously made aware.

47. Plaintiff was treated less favorably than the younger coworkers in her department, in the terms and conditions of her employment, because of her older age. Other older employees in Plaintiff's department at the time, Christine Anderson (57 years of age) and Alexandra Kuman (64 years of age) were also terminated by Defendants in December 2015. These older employees, who were in the protective age class, were also treated less favorably than the younger coworkers, as evidenced by the older employees being terminated at that time, while the younger employees in such department were permitted to stay employed by Envision after December 2015. Defendants demonstrate a pattern and practice of discriminating based upon age.

48. Defendants, and each of them, intentionally or negligently discriminated against Plaintiff and others based on their disability, specifically Defendant Benson when he learned of her disability, and Defendants failed to accommodate Plaintiff and/or other's disability, despite such knowledge of the disabilities. Defendants had a pattern and practice of terminating employees due their disabilities.

49. As a result of such age discrimination by the Defendants, and each of them, Plaintiff has been damaged in her career and has otherwise suffered monetary damage. Plaintiff has and will suffer damages and future harm from such actions by Defendants under the ADEA, and thereby suffered injuries and damages in an amount to be proven at trial, including compensatory damages, past and future lost wages, reputational damage, pain and suffering damages, punitive damages, attorney fees and costs, among other damages to be proven at trial.

**IV.**

**FOURTH CAUSE OF ACTION**

**(All Defendants and DOES 1-100)**

**Willful Violation of the Age Discrimination Act**

50.     Plaintiff incorporates paragraphs 1 through 49 herein by this reference.

51.     Plaintiff brings this cause of action pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.A. §§ 621 et seq.  Jurisdiction also arises pursuant to 28 U.S.C.A. § 1343(4).

52.     Plaintiff has filed this cause of action subsequent to the timely filing of a Charge of Discrimination based on her age with the State of Colorado under the CCRD and the Equal Employment Opportunity Commission.  Plaintiff received a Right to Sue Letter issued by the Equal Employment Opportunity Commission within the statutory time requirement, a true and correct copy of which is attached hereto as Exhibit 1.

53.     Defendants and DOES 1-100 were aware of Plaintiff being within the protected age class of the ADEA.  Despite such knowledge of Plaintiff's age, and based thereupon, Plaintiff was terminated by Defendant Benson within weeks of Defendant Benson gaining such knowledge of her age.  Plaintiff's termination was in whole or in part due to her age, or in combination of her age and disability, for which Defendants were previously made aware.

54.     Defendants' discriminatory conduct was intentional and/or in reckless disregard for Plaintiff's rights under the law and these acts constitute willful indifference to said rights.  Defendant Benson acted in his individual capacity, and/or in this capacity as agent for Defendant Envision and DOES 1-100. Benson acted with an intent to discriminate and/or by willful misconduct in terminating Plaintiff due to her age.

55.     Plaintiff has suffered damages as a result of such willful indifference to her rights, in an amount and form to be proved at trial. Plaintiff has suffered harm from such actions by Defendants, and the injuries and damages are in an amount to be proven at trial, including compensatory damages, past and future lost wages, reputational damage, pain and suffering damages, punitive damages, attorney fees and costs, among other damages to be proven at trial.

**IV.**

**FIFTH CAUSE OF ACTION**

**(All Defendants and DOES 1-100)**

**Willful Violation of the ADA Act**

**42 U.S.C.A. Section 12101 et seq.**

56.    Plaintiff incorporates paragraphs 1 through 55 herein by this reference.

57.    Plaintiff brings this cause of action pursuant to the applicable provisions of the Americans with Disability Act, 42 U.S.C.A. §12101 et seq. Plaintiff had a medical condition and/or disability, as included under 42 U.S.C.A. §12101, and as set forth above.

58.    Defendants Benson, Envision and DOES 1-100 were aware of Plaintiff being disabled within the parameters of the ADA and/or having a medical condition.  Despite such knowledge of Plaintiff's disability, and based thereupon, Plaintiff was terminated by Defendant Benson within weeks of Defendant Benson gaining such knowledge of her disability.  Plaintiff's termination was in whole or in part due to her disability, or in combination of her age and disability, for which Defendants were previously made aware.

59.    Defendants' discriminatory conduct was intentional and/or in reckless disregard for Plaintiff's rights under the law and these acts constitute willful indifference to said rights afforded under the ADA, 42 U.S.C.A. §12112, among other such provisions.  Defendant Benson acted in his individual capacity, and/or in this capacity as agent for Defendants Envision and DOES 1 through 100, when he intentional discriminated against Plaintiff by terminated her based hereunder. Benson acted with intentional discrimination and/or willful misconduct in terminating Plaintiff due to her disability.

60.    Plaintiff has suffered damages as a result of such willful indifference to her rights, in an amount and form to be proved at trial. Plaintiff has suffered harm from such actions by Defendants, and the injuries and damages are in an amount to be proven at trial, including compensatory damages, past and future lost wages, reputational damage, pain and suffering damages, punitive damages, attorney fees and costs, among other damages to be proven at trial.

///

# VI.

## SIXTH CAUSE OF ACTION

### (Defendants Envision and Does 1-100)

### Retaliation For Opposing Unlawful Employment Practices

### TITLE VII, 42 U.S.C.A 2003 et seq.

61.     Plaintiff incorporates paragraphs 1 through 60 herein by reference.

62.     This cause of action is brought pursuant to the Title VII under 42 U.S.C.A. Section 2003. This section provides that no employer or employee shall discriminate or retaliate against any individual because such individual has opposed any unlawful employment act or practice or because such individual made a charge or participated in any manner in an investigation, proceeding, or hearing involving an alleged unlawful employment practice.  It protects against retaliation by employers for the employee's rights to oppose illegal employment actions.

63.     Within days of Plaintiff informing Envision that she had kidney medical problems and ultimately cancer and needed time off for kidney surgery, she was terminated from her position at Envision, in December 2015.  Plaintiff was asked to sign a severance agreement offered to her by Envision to waive her rights, but she declined, telling them she objected to their unlawful employment practice and her termination, and that she wished to pursue legal governmental action as a result of her unjust termination.  Plaintiff and her attorney advised Envision of her intent to file claims against Envision for unlawful ADA discrimination, among other claims.

64.     In June 2016, Plaintiff filed a Complaint with the CCRD and EEOC, alleging unlawful age discrimination, ADA violations, wrongful termination, and other claims.  Envision was immediately advised of this action by CCRD and others. Plaintiff requested an investigation through the CCRD and EEOC, and a hearing as to her rights and Envision's unlawful employment practices, including under the ADA provisions.

65.     From December 2015 to date, Envision sought and often advertised requests for candidates or applications for various open positions at Envision, due to their employment needs. Plaintiff has on many occasions since her termination in December 2015 applied for open and advertised positions at Envision to be reemployed at Envision, for similar or exact positions or duties

1  she had previously performed for Envision.  Ms. Anderson likewise applied for open, similar

2  positions at Envision after her termination.

3      66.  Plaintiff has been denied reemployment for each and every open and/or advertised

4  position she applied for at Envision. Plaintiff was not even afforded an interview or follow-up

5  responses for most if not all such applications she made to Envision for these open positions.

6  Likewise, Ms. Anderson was denied the opportunity to be rehired by Envision after applying.

7      67.  In failing to consider and/or hire Plaintiff for reemployment at Envision, and due to

8  their knowledge of Plaintiff's objections and pursuit of her governmental claim against their unlawful

9  employment practices, Defendants Envision, DOES 1-100 and/or its agents acted in retaliation of

10  Plaintiff's rights to pursue her rights to object to the unlawful violations and employment practices at

11  Envision and due to her filing governmental claims against Envision at EEOC and CCRD, in which

12  she also requested an investigation and a hearing as to Envision's unlawful practices.  In doing so,

13  Defendants violated federal law, Title VII, 42 U.S.C.A 2003 et seq.

14      68.  Envision and its agents, in doing so, retaliated against Plaintiff because she opposed

15  Envision's acts or practices made unlawful by the ADA and/or ADEA, and because she made a

16  charge and participated in an investigation, proceeding, or hearing, violating federal law, Title VII, 42

17  U.S.C.A 2003 et seq..  Envision had a pattern and practice of retaliating against persons who filed

18  complaints, requesting hearings and/or investigations of their ADA and other unlawful employment

19  practices.

20      69.  As a result of such retaliation and discrimination, Plaintiff has and will continue to

21  suffer harm from such actions by Defendants, and the injuries and damages are in an amount to be

22  proven at trial, including compensatory damages, past and future lost wages, reputational damage,

23  pain and suffering damages, punitive damages, attorney fees and costs, among other damages to be

24  proven at trial, and attorney fees pursuant to Title VII, 42 U.S.C.A. 1988, and the ADA 42 U.S.C.A.

25  §12101 et seq., and other provisions.

26  ///

27  ///

28  ///

# VI.

## SEVENTH CAUSE OF ACTION

### (All Defendants and DOES 1 -100)

### Violation of the Family and Medical Leave Act

### 29 U.S.C.A. Section 2601 et seq.

70.     Plaintiff incorporates paragraphs 1 through 69 herein by reference.

71.     This cause of action is brought pursuant to the Family and Medical Leave Act, 29 U.S.C.A. Section 2601.

72.     In November and December 2015, Plaintiff suffered a medical condition and medical problems arose for her while employed by Envision, including kidney disease and cancer, while working for Defendants.

73.     Defendants, and each of them, were made aware of Plaintiff's medical conditions during Plaintiff's employ with Defendants, up to and through December 14, 2015.  Plaintiff advised supervisors Bernal, Madrid, Defendant Envision, and Defendant Benson and DOES 1-100 of her conditions in November and early December 2015 and her need for kidney surgery and biopsies.  She was never offered Family Medical Leave, to which she was entitled.  Instead of offering Plaintiff Family Medical leave time for her medical condition and for her upcoming surgery in December, Plaintiff was given a "Christmas present" by being terminated within the same month she advised Defendant Benson and Envisions management and DOES 1-100 of her medical condition and upcoming surgery.

74.     Despite such knowledge of Plaintiff's medical condition, and as other similarly situated persons with medical conditions experienced, and based thereupon, Plaintiff was terminated by Defendants Benson, Envision and DOES 1-100 within weeks of Defendants gaining such knowledge of her medical condition, instead of offering her Family Medical Leave.  Plaintiff was not afforded her rights under the Family and Medical Leave Act, 29 U.S.C.A. Section 2601 et seq.

75.     Accordingly, Plaintiff is entitled to all the remedies afforded to her under the Family and Medical Leave Act, 29 U.S.C.A. Section 2601, attorney fees under 29 U.S.C.A. Section 2617, and other applicable provisions.

## VII.

### SEVENTH CAUSE OF ACTION

### (All Defendants and DOES 1-100)

### DISPARATE IMPACT under TITLE VII, ADA, and ADEA

76.     Plaintiff incorporates paragraphs 1 through 75 herein by reference.

77.     This cause of action is brought pursuant to Title VII, ADA, and the ADEA, based on claims of disparate impact in the employment practices and termination decisions by Envision and other Defendants.  This section provides that no employer or employee shall treat protected classes, such as those under the ADA and ADEA, differently than others due to their membership in such protected class(es).

78.     Defendants, and each of them, treated Plaintiff unfairly during her employment with them and in her termination of Envision.  Defendants' employment practices were adopted and applied with deliberate discriminatory motives and is functionally equivalent to intentional discrimination.

79.     Despite Defendants knowing of medical conditions of its employees, they failed to provide Family Medical Leave, accommodations, and other time off for such employees to be able to continue to work at Envision in a safe and healthy manner, often forcing such individuals to quit or be terminated or take leave without regard to their rights.

80.     Defendants also treated those employees with medical conditions and/or those who were older differently than other employees when Defendants, and particularly Benson, decided to terminate those employees suffering medical conditions or who were older, retaining the younger, healthier employees.  Even in those instances where a department was to be eliminated or downsizing was desired at Envision, Defendants made such decisions to terminate the older and/or those who suffered medical conditions, while keeping others without such memberships in protected classes in Envision's employ.  For example, Plaintiff, Anderson and Kuman (all employees of the Payment Department prior to December 2015) were members of protected age and medical condition categories and were terminated from the Payments Department in December 2015, while the younger and healthier employees at that department at Envision were allowed to stay and/or were transferred

to another department at Envision, being allowed to continue to be employed. This constitutes unlawful employment practices, and results in disparate impact to such protected class members.

81.    Moreover, when the terminated, older employees and/or employees suffering medical conditions tried to re-apply for other open positions at Envision after they were terminated, they were denied reemployment in whole or in part because of their being in a protected category such as those protected under ADEA and ADA.  This includes Plaintiff and Christine Anderson, among others. This also constitutes unlawful employment practices, and resulted in disparate impact to such protected class members.

82.    Envision's employment and reemployment practices negatively impacted protected classes of the elder and the medically challenged and were intentional and/or performed to discriminate against protected class.  Despite such knowledge of Plaintiff's medical condition and age, and as other similarly situated persons with medical conditions or elderly employees experienced, Defendants failed to protect such memberships and caused harm to Plaintiff.  And when Defendants had the opportunity to take actions to correct the severity of the harm on such protected classes, they failed to take such corrective action by re-hiring them.  This constitutes disparate impact in employment treatment, terminations, and re-hiring practices, among others.

83.    Accordingly, Plaintiff is entitled to all the remedies afforded to her under Title VII, ADEA, and other applicable provisions due to the disparate impact of Defendants' employment practices, as Plaintiff suffered harm and damages, all in an amount according to proof.

84.    Plaintiff is entitled to attorney fees and costs, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. § 626(c), 29 U.S.C.A. Section 2617, Title VII, 42 U.S.C.A. 1988, and the ADA 42 U.S.C.A. 12101 et seq., and other provisions.

///

///

///

///

///

///

**WHEREFORE**, Plaintiff prays for the following damages:

1.  For damages in an amount equal to Plaintiff's back pay and benefits from December 2015 through the present, pursuant to but not limited to, Section 7(b) of the ADEA, 29 U.S.C.A. § 626 et seq., 29 U.S.C.A. Section 2601, Title VII, 42 U.S.C.A. 1988, and the ADA 42 U.S.C.A. 12101 et seq., and other provisions;

2.  For an award of compensatory damages for Plaintiff's injury to her career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits, in an amount of at least two million dollars ($2,000,000.00);

3.  For reinstatement to her previous position, or in the alternative for front pay, pursuant to Section 7(e) of the ADEA, 29 U.S.C.A. § 626(e), Title VII, 42 U.S.C.A. 12101 and 12203 of the ADA, and other provisions;

4.  For other past and future lost income and benefits, and loss of reputation;

5.  For attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. § 626(c), 29 U.S.C.A. Section 2617, Title VII, 42 U.S.C.A. 1988, and the ADA 42 U.S.C.A. 12101 et seq., and other provisions;

6.  For punitive damages wherein provided for; and

7.  For such other and further relief as is just and equitable.

Date:  May 26, 2017                    By:    s/Wendi Santino
                                              Attorney for JANICE SANTINO
                                              Law Office of Wendi Santino
                                              445 Marine View Ave, Suite 300
                                              Del Mar, CA 92014
                                              Ph: (858) 481-9600
                                              Wendi@santinolaw.com

# EXHIBIT 1

EEOC Form 161-B (11/16)

## U.S. Equal Employment Opportunity Commission

## Notice of Right to Sue (Issued on Request)

To:  **Janice Santino**
     **18599 Honeysuckle Way**
     **Monument, CO 80132**

From:  **Phoenix District Office**
       **3300 North Central Ave**
       **Suite 690**
       **Phoenix, AZ 85012**

☐  *On behalf of person(s) aggrieved whose identity is*
   *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **32A-2016-00341** | **Cherrie Y. Martin,** **State & Local Program Manager** | **(602) 640-5064** |

*(See also the additional information enclosed with this form.)*

**Notice to the Person Aggrieved:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

**Elizabeth Cadle,**
**District Director**

**MAR 0 1 2017**

*(Date Mailed)*

Enclosures(s)

cc:  **ENVISION RADIOLOGY, LLC**
     **Jackson Lewis**
     **c/o Timothy Kratz**
     **950 17th Street, Suite 2600**
     **Denver, CO 80202**

**Jodi L. Doucett**
**Doucette Law Group, P.C.**
**11622 El Camino Real, Suite 10**
**San Diego, CA 92130**

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you **receive** this Notice. Therefore, you should **keep a record of this date.** Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of
your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office. If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
**before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**  The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at   http://www.eeoc.gov/laws/types/disability_regulations.cfm.